IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN T. HARDEE,

        Plaintiff,

v.                                                                                                Civil Action No. 3:20cv729

CHRISTOPHER WALZ, *et al.*,

        Defendants.

## MEMORANDUM OPINION

John T. Hardee, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on Hardee's Motion to File a Third Amended Complaint and numerous motions filed by the parties.[2]

### I. Pertinent Procedural History

Hardee initially filed this action with numerous other inmates at the Hampton Roads Regional Jail (the "HRRJ"). (ECF No. 1, at 1–2.) Hardee purported to bring the suit as a class action. (ECF No. 1, at 2.) By Memorandum Order entered on October 16, 2020, the Court informed Hardee and the other inmate plaintiffs that the action could not proceed as a class

---

[1] That statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court corrects the capitalization, punctuation, and spelling in the quotations from the parties' submissions. The Court omits any secondary citations from the parties' submissions.

action. (ECF No. 5, at 2–3.) In the following months, the Court dismissed the majority of plaintiffs because they failed to comply with the directions of the Court. (*See, e.g.*, ECF Nos. 16, 17.) By Memorandum Order entered on March 22, 2021, the Court ordered that this action would proceed with Hardee as the sole plaintiff. (ECF No. 21, at 4.)

By Memorandum Order entered on April 30, 2021, the Court directed Hardee to file a particularized complaint. (ECF No. 28.) On July 14, 2021, Hardee filed his Particularized Complaint.[3] (ECF No. 33.) Thereafter, the Court ordered, (ECF No. 35), and Hardee provided, (ECF No. 36), the addresses for the Defendants. The Court then directed the Marshal to serve the Defendants named in the Particularized Complaint. (ECF No. 40.)

On November 14, 2022, Defendants Director Clarke and the VDOC filed a Motion to Dismiss. (ECF No. 52.) On November 15, 2022, counsel filed a Motion to Quash Purported Service of the Summons and Particularized Complaint on Defendant T. Jones. (ECF No. 58.) On November 15, 2022, the Marshal returned the summonses unexecuted for Defendants Cowan, Hodge, and Walz because they no longer worked at the facility. (ECF No. 56, at 2, 5, 7.)

On December 14, 2022, Defendants Wellpath, LLC, Correct Care Solutions, LLC, Topham, and Hodge filed a Motion to Dismiss. (ECF No. 73.) On December 14, 2022, Defendants Bhagirath, Cheeseboro, and Tillman filed a Motion for Summary Judgment. (ECF No. 81.)

---

[3] Hardee named the following individuals and entities as defendants: Superintendent Christopher Walz; Assistant Superintendent Felicia Cowan; Captain Winston Bhagirath; Sergeant Cheeseboro; Sergeant T. Jones; Officer Tillman; Officer Sanderlin; Officer Casper; Officer Griffith; Officer Clark; the Virginia Department of Corrections (the "VDOC"); Harold Clarke, the Director of the VDOC; "Correct Care Solutions and its other name, Well Pa[th]"; Nurse Topham; and Nurse J. Hodge. (ECF No. 33, at 1.) Although Hardee listed Officer Sanderlin, Officer Griffith, and Officer Casper as Defendants, he later agreed that all claims against them should be dismissed. (ECF No. 35, at 1.)

On December 19, 2022, Hardee filed a Motion for Leave to File an Amended Complaint (the "December 2022 Motion to Amend"). (ECF No. 86.)

By Memorandum Order entered on December 28, 2022, the Court denied without prejudice Hardee's attempts to amend his complaint because he failed to submit a copy of his proposed amended complaint. (ECF No. 92, at 3.)

On January 17, 2023, Hardee again moved to amend his complaint (the "January 2023 Motion to Amend"), (ECF No. 94), and submitted a copy of his Proposed Third Amended Complaint, (ECF No. 94-3). Hardee also moved for an extension of time to respond to any outstanding dispositive motion until the Court ruled on his motion to amend. (ECF No. 96.)

On January 20, 2023, Defendant Officer Clark moved for leave to file an out of time response to the Particularized Complaint. (ECF No. 100.) On January 24, 2023, Defendants Wellpath, LLC, Correct Care Solutions, LLC, Topham, and Hodge filed their opposition to Hardee's Motion to Amend. (ECF No. 102.) On January 25, 2023, Defendants Bhagirath, Cheeseboro, and Tillman filed their opposition to Hardee's Motion to Amend. (ECF No. 103.)

On February 9, 2023, Hardee filed a Motion to Disclosure and Discovery wherein he requests that the Defendants provide the Court with the last known address for any unserved defendant. (ECF No. 110, at 3.)

## II. Hardee's January 2023 Motion to Amend

At this juncture, Hardee requires leave of the Court to amend his complaint. Fed. R. Civ. P. 15(a). Nevertheless, Federal Rule of Civil Procedure 15(a)(2) states that, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Court of Appeals for the Fourth Circuit has interpreted this to mean that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has

3

been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). The parties oppose Hardee's Motion to Amend primarily on the ground that it would be futile to permit amendment because Hardee fails to state a claim against them, (ECF No. 102, at 2–3), or because Hardee's proposed claims would not survive their Motion for Summary Judgment, (ECF No. 103, at 2–3). Given these arguments it is appropriate to first review the allegations included in the Proposed Third Amended Complaint and the claims set fort therein.

A. **Allegations in the Proposed Third Amended Complaint**

Hardee's Proposed Third Amended Complaint concerns his infection with COVID-19 while detained in the HRRJ. In March of 2018, Hardee was incarcerated in the HRRJ as a pretrial detainee. (ECF No. 94-3 ¶ 5.)[4] On March 17, 2020, Hardee read a newspaper article wherein Christopher Walz, the Superintendent of the HRRJ represented that "[h]is staff is also screening inmates who leave for court. If someone develops flu-like symptoms, the jail has special 'negative pressure' rooms available to quarantine." (ECF No. 94-3 ¶ 5.) Hardee's cellmate, however, had gone to court on two consecutive dates and had not been screened. (ECF No. 94-3 ¶ 5.) Hardee wrote a petition to public officials, including Superintendent Walz, wherein he "asked for the suspension of new admits, and for bonds, and that convicted prisoners

---

[4] Hardee again names the following individuals and entities as defendants: Superintendent Christopher Walz; Assistant Superintendent Felicia Cowan; Captain Winston Bhagirath; Sergeant Mary Cheeseboro; Sergeant T. Jones; Officer Matthew Tillman; Officer Clark; the VDOC; Harold Clarke, the Director of the VDOC; "Correct Care Solutions and its other name, Wellpath"; Registered Nurse Kathyrn Topham; and, Nurse Practitioner Jennifer Hodge. (ECF No. 94–3, at 1.)

be picked up by the" VDOC. (ECF No. 94-3 ¶ 6.) Numerous inmates signed Hardee's petition. (ECF No. 94-3 ¶ 5.)

On April 2, 2020, Hardee and his three cellmates were moved from cell 2-1-B-109, upstairs to cell 2-B-210 by Officer Clark. (ECF No. 94-3 ¶ 7.) Later that day, Officer Clark and Sergeant Cheeseboro directed the inmates in Hardee's cell block to briefly lockdown. (ECF No. 94-3 ¶ 7.) Thereafter, the correctional officers moved some inmates into 2-1-B-209, which was near Hardee's new cell. (ECF No. 94-3 ¶¶ 7, 8.) After the new inmates were placed in their cell, the other inmates on the block were released from lockdown. (ECF No. 94-3 ¶ 7.) Hardee later learned that the newly arrived inmates "were new intakes placed in 'medical observation.'" (ECF No. 94-3 ¶ 7.) The inmates on the block were angry because they were "being forced to share the same poor ventilation system with these new intakes." (ECF No. 94-3 ¶ 7.) Sergeant T. Jones, Sergeant Cheeseboro, and Officer Clark "had no answers." (ECF No. 94-3 ¶ 8.) Hardee and his cellmates also had to share the same utility closet with the newly arrived inmates. (ECF No. 94-3 ¶ 8.)

On April 7, 2020, Hardee was escorted from his cell to a conference room. (ECF No. 94-3 ¶ 9.) Superintendent Walz, Assistant Superintendent Cowan, and Captain Bhagirath were present. (ECF No. 94-3 ¶ 10.) With respect to Hardee's petition, Superintendent Walz stated, "I believe that there might be some miscommunication as to the meaning of 'screening.'" (ECF No. 94-3 ¶ 10.) Hardee then explained how his cellmate had gone to court and returned without being screened. (ECF No. 94-3 ¶ 10.) "Walz and Bhagirath looked confused and unaware. Bhagirath said, 'I'll investigate as to why this happened.'" (ECF No. 94-3 ¶ 10.) Hardee then voiced his displeasure with having the newly arrived inmates "being 'medically observed' in general population." (ECF No. 94-3 ¶ 10.) Walz, Cowan, and Bhagirath assured

Hardee that if the newly arrived inmates showed any symptoms of COVID–19, they would be moved to the negative pressure cells. (ECF No. 94-3 ¶ 11.)

On April 9, 2020, Bhagirath and Cowan came and spoke to Hardee and other inmates. (ECF No. 94-3 ¶ 12.) Hardee asked them when the inmates would get masks, because they knew the Governor had approved 2 million dollars to purchase personal protective equipment ("P.P.E."). (ECF No. 94-3 ¶ 12.) Cowan stated that they had "applied for P.P.E., so we will see." (ECF No. 94-3 ¶ 12.)

Although the newly arrived inmates were quarantined,

> [i]nmates Morris, Mitchener, and Floyd continued to be worried about getting sick, since they were the Pod Workers. All of them continued to do their laundry and cleaning the '4-man-cells' under the impression those new intakes weren't sick. Especially, when Tillman, T. Jones, and Cheeseboro kept saying their "health is fine."

(ECF No. 94-3 ¶ 12.)

On April 17, 2020, "inmate Floyd began sweating, sneezing, and coughing. He remained in his cell all day until he left for medical and never returned." (ECF No. 94-3 ¶ 13.) Correctional Officer Tillman and a recruit cleaned Floyd's cell with bleach. (ECF No. 94-3 ¶ 13.)

On April 18, 2020, the inmates were made to lockdown and were not allowed to use the shower or phone for the next few days. (ECF No. 94-3 ¶ 14.) Correctional staff then began wearing medical gowns and masks. (ECF No. 94-3 ¶ 14.) On April 19, 2020, Hardee learned from the television that the HRRJ had inmates infected with COVID–19 and was no longer taking new inmates. (ECF No. 94-3 ¶ 14.) Around this time, Hardee and his cell-mate, Mitchener, began exhibiting symptoms consistent with COVID-19. (ECF No. 94-3 ¶ 14.) "One by one other inmates start[ed] being removed for symptoms, and on April 21, 2020, Mitchener

6

[was] removed with a 101.1 temperature." (ECF No. 94-3 ¶ 14.) That night a nurse refused Hardee's request for a health request form and refused to test him for COVID-19. (ECF No. 94-3 ¶ 15.)

On April 22, 2020, Nurse Topham and four other nurses informed the inmates in Hardee's pod that they were under quarantine. (ECF No. 94-3 ¶ 15.) Hardee told Nurse Topham that his cellmate had been removed, that he had headaches and diarrhea, and that he wanted to be tested. (ECF No. 94-3 ¶ 5.) Nurse Topham took Hardee's temperature, informed him that it was normal, and told him to drink lots of water. (ECF No. 94-3 ¶ 15.) Hardee was angry, so he asked for a grievance form, but Nurse Topham just walked away. (ECF No. 94-3 ¶ 15.)

On April 23, 2020, after Hardee's mother called the HRRJ, Hardee was tested for COVID-19. (ECF No. 94-3 ¶ 16.) Pending the result of his COVID-19 test, Hardee was relocated to another pod and was provided a mask. (ECF No. 94-3 ¶ 16.) Hardee contends that this reflects that the correctional staff "had the masks and were only giving them out once [an inmate was] sick — not to prevent [infection]." (ECF No. 94-3 ¶ 16.) On April 24, 2020, Hardee's test for COVID-19 came back positive. (ECF No. 94-3 ¶ 17.)

In the ensuing days, Hardee "continued to get worse." (ECF No. 94-3 ¶18.) Hardee contends that he experienced body aches and couldn't taste his food. (ECF No. 94-3 ¶ 18.) Additionally, he has suffered from sleepless nights and depression. (ECF No. 94-3 ¶ 18.) It took fifty days before Hardee had a double negative test for COVID-19. (ECF No. 94-3 ¶ 18.)

Hardee demands monetary damages and declaratory relief. (ECF No. 94-3, at 12–14.)

### B. Grounds for Relief

Claim 1   "Defendants Walz, Cowan, Bhagirath, Cheeseboro, and T. Jones [are] fully responsible as supervisors for exercising deliberate indifference to [Hardee's] health and safety." (ECF No. 94-3 ¶ 21.)[5]

(a) "They . . . continued to disregard the substantial risk and harm by choosing to quarantine new intakes in a cell, in the middle of general population, rather than having those individuals 'isolated' elsewhere." (ECF No. 94-3 ¶ 21.) These actions (i) violated Hardee's constitutional rights under the Fourteenth Amendment[6] and (ii) amounted to negligence under state law. (ECF No. 94-3 ¶ 21.)

(b) "They failed to give [Hardee] a mask, or take necessary steps to prevent [Hardee] and others from getting sick and failed to remedy the wrong even after reading [the inmates'] petition and meeting with [the] block." (ECF No. 94-3 ¶ 21.) The petition had requested a ban on new admissions and for the VDOC to pick up convicted inmates. (ECF No. 94-3 ¶ 6.) These actions (i) violated Hardee's constitutional rights under the Fourteenth Amendment and (ii) amounted to negligence under state law. (ECF No. 94-3 ¶ 21.)

(c) "Defendants subjected [Hardee] to extreme and excessive conditions of confinement; depriving [Hardee] of a shower, access to the phones, razors, and hygiene, and being unable to exercise, allowing [his] muscles to waste away." (ECF No. 94-3 ¶ 21.) These actions (i) violated Hardee's constitutional rights under the Fourteenth Amendment and (ii) amounted to negligence under state law. (ECF No. 94-3 ¶ 21.)

(d) Defendants failed to give Hardee a "mask until it was too late, while every nurse and officer wore a mask." (ECF No. 94-3 ¶ 21.) These actions (i) violated Hardee's constitutional rights under the Fourteenth Amendment and (ii) amounted to negligence under state law. (ECF No. 94-3 ¶ 21.)

(e) "Defendants Cheeseboro and T. Jones . . . with Tillman, Clark, and other officers . . . [brought] the sick new intakes through [Hardee's] living area and allow[ed] them to spread COVID-19." (ECF No. 94-3 ¶ 21.) These actions (i) violated Hardee's constitutional rights under the Fourteenth Amendment and (ii) amounted to negligence under state law. (ECF No. 94-3 ¶ 21.)

---

[5] Claims 1(a) through 1(d) are directed at Defendants Walz, Cowan, Bhagirath, Cheeseboro, and Jones. Claim 1(e) is directed at Defendants Cheeseboro, Jones, Tillman, and Clark.

[6] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

8

| | |
|---|---|
| Claim 2 | Harold Clarke and the VDOC could have and should have "ordered the lockdown and further suspension [of] new intakes" at the HRRJ. ((ECF No. 94-3 ¶ 22.) The failure to do so violated (a) Hardee's constitutional rights and (b) amounted to negligence. (ECF No. 94-3 ¶ 22.) |
| Claim 3 | "CorrectCare Solutions/Well Path, Kathryn Topham, and Jennifer Hodge exercised deliberate indifference to [Hardee's] medical needs, and failing to protect [Hardee] from COVID-19." (ECF No. 94-3 ¶ 23) |

(a) These Defendants failed to advise the HRRJ staff that it was inappropriate to house the new intakes, in quarantine, among the general population inmates. (ECF No. 94-3 ¶ 23.) These actions (i) violated Hardee's rights under the Fourteenth Amendment; (ii) constituted negligence; and, (iii) amounted to medical malpractice. (ECF No. 94-3 ¶ 23.)

(b) Topham "was unprofessional, and clearly wrong in her diagnosis when she ignored [Hardee's] symptoms." (ECF No. 94-3 ¶ 23.) These actions: (i) violated Hardee's rights under the Fourteenth Amendment; (ii) constituted negligence; and (iii) amounted to medical malpractice. (ECF No. 94-3 ¶ 23.)

(c) Hodge also ignored Hardee's symptoms and on May 6, 2020 wrongly told Hardee that he was negative when he still was positive for COVID-19. (ECF No. 94-3 ¶ 23.) These actions (i) violated Hardee's rights under the Fourteenth Amendment; (ii) constituted negligence; and, (iii) amounted to medical malpractice. (ECF No. 94-3 ¶ 23.)

| | |
|---|---|
| Claim 4 | "[A]ll defendants failed to adequately screen incoming new intakes." (ECF No. 94-3 ¶ 23.) This lack of action (i) violated Hardee's rights under the Fourteenth Amendment and (ii) amounted to negligence under state law. (ECF No. 94-3 ¶ 23.) |

### C. Analysis

As noted above, in opposing Hardee's Motion to Amend, Defendants contend that it would be futile to allow the amendment because Hardee's claims would not survive the dispositive motions that they have filed. The Motion to Dismiss filed by Wellpath, Correct Care Solutions, Topham, and Hodge fails to address Hardee's state law negligence and medical malpractice claims, much less explain why they should be dismissed. (ECF Nos. 74–76.) Similarly, the Motion for Summary Judgment filed by Bhagirath, Cheeseboro, and Tillman fails

9

to acknowledge or explain why Hardee's state law negligence claims lack merit. (ECF No. 82.) Additionally, the Motion for Summary Judgment generally fails to acknowledge and address the specific constitutional claims raised in the Proposed Third Amended Complaint as set forth above.

Further, it appears that at all times relevant to the Proposed Third Amended Complaint, Hardee was a pretrial detainee. "[I]t is settled that pretrial detainees possess a constitutional right 'to be free from punishment.'" *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Nevertheless, in moving for summary judgment, Defendants Bhagirath, Cheeseboro, Clark, and Tillman assert that, "[i]n the Fourth Circuit, the Fourteenth Amendment standard for evaluating challenges to conditions of confinement is the same as the Eighth Amendment analysis applicable to convicted prisoners. *See Brown v. Harris*, 240 F.3d 388–89 (4th Cir. 2001) (holding deliberate indifference standard applies to pretrial detainees)." (ECF No. 111, at 1.) The deliberate indifference standard remains appropriate for claims by pretrial detainees regarding the denial of adequate medical care. *See Tarashuk v. Givens*, 53 F.4th 154, 163 (4th Cir. 2022); *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021); *Sams v. Armor Corr. Health Servs., Inc.*, No. 3:19CV639, 2020 WL 5835310, at *19 n.19 (E.D. Va. Sept. 30, 2020). However, it is not clear that all of Hardee's claims can be categorized as the denial of adequate medical care. *See Woodley v. Leabough*, No. 3:20–CV–993–HEH, 2022 WL 15524592, at *7 (E.D. Va. Oct. 27, 2022) (denying summary judgment where defendants failed to adequately brief the relevant jurisprudence for challenges to conditions of confinement by a pretrial detainee).

Because it does not appear that it would be futile to permit the amendment, Hardee's Motion to Amend will be GRANTED. (ECF No. 94.) The Clerk will be DIRECTED to FILE

the Proposed Third Amended Complaint as a separate docket entry. (ECF No. 94–3.) The Proposed Third Amended Complaint supplants the prior complaints.

### III. Service Issues

On October 26, 2022, the Marshal served the summons and Particularized Complaint for Defendant T. Jones on Agent Taylor, an individual authorized to accept service of process for the HRRJ and its employees. (ECF No. 85, at 3–4.) On November 15, 2022, third party non-defendant, Jeff Vergakis, the current Superintendent of the HRRJ, by counsel, filed a Motion to Quash Purported Service and Summons and Particularized Complaint on Defendant T. Jones. (ECF Nos. 58, 59.) In that motion, counsel represents that Defendant T. Jones is no longer an employee of the HRRJ and Agent Taylor was not authorized to accept service of process for any non-employees. (ECF No. 59, at 1.) Accordingly, the Motion to Quash will be GRANTED. (ECF No. 58.)

At this juncture, Defendants Walz, Cowan, and Jones have not been served. Hardee filed a Motion for Disclosure and Discovery (ECF No. 109) will be GRANTED to the extent that, within eleven (11) days of the date of entry hereof, counsel for Bhagirath, Cheeseboro, Tillman, and Clark shall provide the Court with the last known addresses for Defendants Walz, Cowan, and Jones under seal. All information pertaining to those addresses will be maintained under seal. Upon receipt of those addresses, the Court will issue process for Defendants Walz, Cowan, and Jones.

### IV. Outstanding Matters and Further Proceedings

The outstanding Motions to Dismiss, (ECF Nos. 52, 73), and Motion for Summary Judgment, (ECF No. 81), will be DENIED WITHOUT PREJUDICE. Any party wishing to

renew their motion with respect to the Third Amended Complaint must file it within thirty (30) days of the date of entry hereof.

Defendant Officer Clark's Motion to File an Out of Time Response, (ECF No. 100), will be GRANTED to the extent that he shall file an appropriate Motion for Summary Judgment with respect to the Third Amended Complaint within thirty (30) days of the date of entry hereof.

Hardee's Motion in Opposition, (ECF No 79), and Motion for Extension of Time, (ECF No. 96), will be DENIED AS MOOT.

An appropriate Order will accompany this Memorandum Opinion.

Date: 3/16/2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge